ORIGINAL

Approved: _____
Christy Slavik / Camille L. Fletcher
Assistant United States Attorneys

**23 MAG 3213**

Before:    THE HONORABLE ONA T. WANG
           United States Magistrate Judge
           Southern District of New York

---

| | |
|---|---|
| UNITED STATES OF AMERICA | **SEALED COMPLAINT** |
| v. | Violations of 21 U.S.C. §§ 841 and 846 |
| FERNANDO LOPEZ, a/k/a "Freddy," and EDWIN ORTIZ, a/k/a "Antony Fat," | COUNTY OF OFFENSE: BRONX |
| Defendants. | |

SOUTHERN DISTRICT OF NEW YORK, ss.:

LEE ARROYO, being duly sworn, deposes and says that he is a Detective with the New York City Police Department ("NYPD"), and charges as follows:

## COUNT ONE
### (Narcotics Conspiracy)

1.    From at least in or about January 2022 through at least on or about November 21, 2022, in the Southern District of New York and elsewhere, FERNANDO LOPEZ, a/k/a "Freddy," and EDWIN ORTIZ, a/k/a "Antony Fat," the defendants, and others known and unknown, intentionally and knowingly combined, conspired, confederated, and agreed, together and with each other, to violate the narcotics laws of the United States.

2.    It was part and an object of the conspiracy that FERNANDO LOPEZ, a/k/a "Freddy," and EDWIN ORTIZ, a/k/a "Antony Fat," the defendants, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3.    The controlled substances involved in the offense were: (i) mixtures and substances containing a detectable amount of cocaine base, in the form commonly known as "crack cocaine," in violation of Title 21, United States Code, Section 841(b)(1)(C); (ii) mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(C); (iii) mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(C); and (iv) mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

4.      I am an NYPD detective and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with other law enforcement agents and witnesses, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5.      Based on my participation in this investigation, my review of law enforcement reports and records, including reports prepared by the NYPD Controlled Substance Analysis Section ("NYPD Lab"), and my conversations with other law enforcement officers, I have learned, in substance and in part, the following:

a.      On or about January 31, 2022, an individual was found deceased in a home in the Bronx ("Victim-1"). It was later determined that Victim-1's cause of death was acute intoxication due to the combined effects of fentanyl, cocaine, xylazine, and alprazolam.

b.      Following his death, law enforcement officers obtained Victim-1's cellular phone and reviewed text messages between Victim-1 and another individual ("Individual-1") from the night before Victim-1's death. In the messages, Victim-1 asked Individual-1, in sum and substance, to provide Victim-1 with a quantity of cocaine, and Individual-1 agreed to do so.

c.      Law enforcement officers interviewed Individual-1.[1] During the interview, Individual-1 provided, in sum and substance and in part, the following information:

i.      Individual-1 explained to law enforcement officers that Individual-1 had known Victim-1 for approximately six to seven years, and they regularly used narcotics together. Individual-1 often purchased narcotics—specifically, cocaine—on behalf of Victim-1, meaning that Individual-1 purchased narcotics for Victim-1 using funds provided by Victim-1, or Individual-1 used Individual-1's own money to purchase the narcotics and Victim-1 reimbursed Individual-1 once Individual-1 delivered the narcotics.

ii.      Individual-1 further explained that Individual-1 regularly purchased heroin from an individual named "Freddy" for Individual-1's personal use, and that Individual-1 occasionally purchased narcotics—specifically, cocaine—from Freddy on Victim-1's behalf. The night of Victim-1's death, Individual-1 purchased what Individual-1 believed to be cocaine from Freddy on Victim-1's behalf and delivered the narcotics to Victim-1 in the Bronx.

---

[1] Individual-1 has provided information to law enforcement in hopes of receiving leniency. Individual-1 has a substance abuse disorder and has previously been arrested for drug offenses on multiple occasions.

2

          iii.          Individual-1 identified a law enforcement photograph of FERNANDO LOPEZ, a/k/a "Freddy," the defendant, as "Freddy," the person from whom Individual-1 regularly purchased narcotics, including the night of Victim-1's death.

          d.          Following the interview of Individual-1, law enforcement officers contacted LOPEZ using a cellphone number provided by Individual-1 (the "Lopez Phone"). Specifically, on or about May 4, 2022, an undercover NYPD officer ("UC-1") contacted LOPEZ by text message and arranged to purchase $300 of cocaine from LOPEZ. Later that day, UC-1 arrived at a specific location in the Bronx ("Location-1"). At Location-1, UC-1 entered LOPEZ's vehicle ("Vehicle-1"), and LOPEZ gave UC-1 fourteen bags containing a white powdery substance in exchange for $300. The May 4, 2022 transaction between UC-1 and LOPEZ was video recorded. Based on my review of a report prepared by the NYPD Lab, I have learned that the white powdery substance contained in the fourteen bags that LOPEZ sold to UC-1 on May 4, 2022, weighed approximately four grams and tested positive for cocaine.[2]

          e.          On or about June 2, 2022, UC-1 called the Lopez Phone and arranged to purchase cocaine from LOPEZ. Later that day, UC-1 met with LOPEZ at Location-1, where LOPEZ provided UC-1 with a clear twist[3] and 15 clear Ziploc bags containing a white powdery substance in exchange for $500. The June 2, 2022 transaction between UC-1 and LOPEZ was video recorded. Based on my review of a report prepared by the NYPD Lab, I have learned that the white powdery substance contained in the clear twist and one Ziploc bag that LOPEZ sold to UC-1 on June 2, 2022, weighed approximately 5.4 grams and tested positive for cocaine.[4]

          f.          On or about August 25, 2022, UC-1 contacted the Lopez Phone and arranged to purchase cocaine from LOPEZ at Location-1. Later that day, UC-1 met with LOPEZ at Location-1. LOPEZ was driving a vehicle ("Vehicle-2"), and UC-1 met with LOPEZ inside Vehicle-2. While inside Vehicle-2, LOPEZ provided UC-1 with a clear twist containing a white powdery substance in exchange for $500. During this transaction, UC-1 asked LOPEZ for "something stronger," to which LOPEZ responded, in sum and substance, "sure, for the next one." Based on my conversations with UC-1 and my training and experience, I understand that the phrase "something stronger" was a reference to narcotics containing fentanyl. The August 25, 2022 transaction between UC-1 and LOPEZ was video recorded. Based on my review of a report

---

[2] Due to NYPD protocol regarding law enforcement officers' handling of narcotics, the descriptions of the substances sold by LOPEZ or ORTIZ to UC-1, as set forth in paragraphs 5(d) through 5(k), generally summarize information provided by UC-1 based on UC-1's observations of the exterior of packaging and substances contained within the packaging provided by LOPEZ or ORTIZ. In accordance with safety protocols, UC-1 typically did not open the packaging and count each item that LOPEZ or ORTIZ provided or claimed to provide. Instead, the items were submitted to the NYPD Lab for analysis. During the NYPD Lab analysis, NYPD Lab technicians, who opened the packaging to measure and analyze the substances contained therein, at times identified a number of items contained within the packaging that differed from what UC-1 believed UC-1 had received from LOPEZ or ORTIZ.

[3] A twist is a piece of plastic without a closing mechanism.

[4] The NYPD Lab tested only the substances in one twist and one of the fifteen Ziploc bags.

prepared by the NYPD Lab, I have learned that the white powdery substance contained in the clear twist that LOPEZ sold to UC-1 on August 25, 2022, weighed approximately ten grams and tested positive for cocaine.

g.     On or about September 29, 2022, UC-1 called LOPEZ on the Lopez Phone and arranged to purchase cocaine. During the conversation, UC-1 asked LOPEZ to make the cocaine "a bit stronger" (i.e., with fentanyl in it). LOPEZ told UC-1, in sum and substance, that he would sell the cocaine and fentanyl separately and that UC-1 could mix them together their self because LOPEZ "didn't want problems." LOPEZ then told UC-1 that his "brother," would deliver the narcotics to UC-1. Later that day, while at Location-1 UC-1 received a call from an individual later identified as EDWIN ORTIZ, a/k/a "Antony Fat,"[5] the defendant, who was using a certain phone number (the "Ortiz Phone"). During the call, ORTIZ stated, in sum and substance, that he had narcotics to deliver to UC-1. ORTIZ arrived at Location-1 in Vehicle-2, which UC-1 then entered. ORTIZ introduced himself as "Antony," and then gave UC-1 a white napkin containing two clear twists, one containing a white powdery substance and the other containing a tan powdery substance, in exchange for $800. The September 29, 2022 transaction between UC-1 and ORTIZ was video recorded. Based on my review of a report prepared by the NYPD Lab, I have learned that the substance contained in one of the clear twists that ORTIZ sold to UC-1 on September 29, 2022, weighed approximately two grams and tested positive for cocaine base, and the substance in the second clear twist weighed approximately fifteen grams and tested positive for cocaine, respectively.

h.     On or about October 5, 2022, UC-1 called LOPEZ and arranged to purchase narcotics. Later that day, UC-1 met LOPEZ at Location-1. LOPEZ arrived in a vehicle ("Vehicle-3"), which UC-1 entered.[6] LOPEZ gave UC-1 a clear twist, which had two other twist containing a white rocky substance, in exchange for $400. Based on my review of a report prepared by the NYPD Lab, I have learned that the substances contained inside each twist tested positive for cocaine weighing approximately nine grams and fentanyl weighing approximately two grams. During that same transaction, LOPEZ also provided UC-1 ten glassines containing a tan powdery substance, as a "sample" for UC-1's future purchases. Based on my review of a report prepared by the NYPD Lab, I have learned that the substance inside one of the ten glassines tested positive for heroin and fentanyl, and weighed approximately .06 grams.[7]

i.     On or about October 20, 2022, UC-1 called LOPEZ and arranged to purchase narcotics. Later that day, UC-1 met LOPEZ at Location-1 inside Vehicle-3. In exchange for $2,000, LOPEZ provided UC-1 with a clear twist containing a white rocky substance and another clear twist containing other substances. During the transaction, LOPEZ said, among other things, that UC-1 could mix the substances together but warned UC-1 to be "very careful" because

---

[5] UC-1 later identified "Antony Fat" as ORTIZ based on a review of photographs in law enforcement databases.

[6] Based on a review of records provided by a rental car company, I learned that the individual identified on the rental car records as having rented Vehicle-3 was EDWIN ORTIZ, a/k/a "Antony Fat," the defendant.

[7] The NYPD Lab tested only the substance in one of the ten glassines.

4

he had "seen too many people dying over the fentanyl." Based on my review of a report prepared by the NYPD Lab, I have learned that the substance in one of the twists tested positive for cocaine and weighed approximately 37.8 grams, and the substance in the second twist tested positive for fentanyl, and weighed approximately 4.3 grams.

j.    On or about November 10, 2022, UC-1 called LOPEZ and arranged to purchase $2,150 worth of cocaine, fentanyl, and heroin. Later that day, UC-1 arrived at Location-1 and met LOPEZ, who was observed driving Vehicle-3. In exchange for $2,150, LOPEZ handed UC-1 a clear twist containing the following: (1) a clear twist containing white powdery substance; (ii) a second twist containing another substance; and (iii) forty glassines containing a tan powdery substance. Based on my review of a report prepared by the NYPD Lab, I have learned that the substance in one of twists tested positive for cocaine and weighed approximately 38.3 grams; the substance in the second twist tested positive for fentanyl and weighed approximately 4.6 grams; and two of the glassines tested positive for heroin and fentanyl, and weighed approximately .096 grams. [8]

k.    On or about November 21, 2022, UC-1 called LOPEZ and arranged to purchase a quantity of heroin worth $1,900. Later that day, UC-1 arrived at Location-1 and met LOPEZ inside Vehicle-3. In exchange for $1,900, LOPEZ handed UC-1 a clear plastic bag containing what UC-1 believed contained 400 glassines[9] containing a tan powdery substance. Based on my review of a report prepared by the NYPD Lab, I have learned that the substance inside ninety-four of the glassines tested positive for heroin, fentanyl, and methamphetamine, and weighed approximately nine grams.[10]

6.    Based on my participation in this investigation, my review of law enforcement reports and records, and my conversations with other law enforcement officers, I have learned, in substance and in part, the following:

a.    On or about February 2, 2023, an undercover NYPD officer ("UC-2") called ORTIZ on the Ortiz Phone to arrange the purchase of "bundles"[11] of heroin.

---

[8] The NYPD Lab tested the substances in two of the forty glassines.

[9] During the analysis of the glassines, the NYPD Lab technician found 200, not 400 glassines as reported by UC-1. In a follow up conversation between UC-1 and LOPEZ, LOPEZ stated, in sum and substance, that he had accidentally given UC-1 a package with 200 glassines instead of 400 glassines.

[10] Ninety-four of the 200 glassines were tested.

[11] I know from training and experience that the term "bundles" is used to refer to 10 glassines of heroin.

   b.      UC-2 met ORTIZ[12] near a restaurant in the Bronx, New York (the "Restaurant"). Upon meeting ORTIZ, UC-2 and Ortiz entered the Restaurant.  ORTIZ then sold UC-2 forty glassines containing a white powdery substance in exchange for $160. Based on my review of a report prepared by the NYPD Lab, I have learned that the substance in two glassines tested positive for fentanyl and weighed approximately .12 grams.[13]

   WHEREFORE, I respectfully request that a warrant be issued for the arrest of FERNANDO LOPEZ, a/k/a "Freddy," and EDWIN ORTIZ, a/k/a "Antony Fat" the defendants, and that they be arrested, and imprisoned or bailed, as the case may be.


s/ Lee Arroyo /OTW

LEE ARROYO
Detective
New York City Police Department


Sworn to me through the transmission of
this Complaint by reliable electronic
means (telephone), this ___ day of April, 2023.


THE HONORABLE ONA T. WANG
United States Magistrate Judge
Southern District of New York

---

[12] During the February 9, 2023 meeting, UC-1 was seated in the rear seat of an unmarked police vehicle parked near the Restaurant. UC-1 recognized the person that UC-2 met with as ORTIZ, the same person that UC-1 purchased narcotics from on September 29, 2022. *See supra* ¶ 5(g).

[13] The NYPD Lab tested two of the forty glassines.